**Francis NIELSEN and Jacqueline Nielsen, Plaintiffs,**

v.

**WEEKS MARINE INC. and Derrick Vessel Barge 525, Defendants.**

No. 93 CV 2240.

United States District Court, E.D. New York.

Dec. 15, 1995.

Robert J. DeBoissiere, Staten Island, New York, for plaintiff.

Lawrence M. Honig, New York City, for defendants.

### MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Francis Nielsen, a New York resident, brought this personal injury action in April 1993 in New York Supreme Court, Richmond County, alleging under the Jones Act, 46 U.S.C.App. § 688, that defendants were negligent and alleging liability under the general maritime law and for unseaworthiness. His wife, plaintiff Jacqueline Nielsen, also asserted a claim for loss of consortium. Defendant Weeks Marine Inc. (Weeks), a New Jersey corporation, removed the case to this court on May 19, 1993 pursu-

ant to 28 U.S.C. § 1441, on the ground that the action was founded on a claim under the Jones Act and general maritime law. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1332.

Thereafter the parties took depositions and engaged in other discovery. In 1995 defendants moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiffs then cross-moved and for the first time sought to remand the case to state court pursuant to 28 U.S.C. § 1447(e).

## I

The following relevant facts as to the merits of the claims are undisputed. Weeks contracted with New York City to renovate certain slips and piers at the Old Coast Guard Piers in Staten Island. In 1991 Weeks employed Francis Nielsen as a dockbuilder who belonged to a dockbuilders' union.

From approximately March through May of 1991, Nielsen was part of a dockbuilding gang assigned by Weeks to repair Pier 2A of the Old Coast Guard Piers. Weeks used Derrick Vessel Barge 525 (Barge 525) at the pier to store materials and to set and drive piles. A tugboat brought Barge 525, carrying the derrick, to the site where the barge was tied to the pier. Otherwise Barge 525 never carried persons or materials to and from the pier. Another barge supplied Barge 525 with additional piles for the project.

Barge 525 remained anchored at the work site for the duration of the renovation. It housed several structures for storage of piles and other construction materials and also held the derrick used to drive piles. Although it could not travel independently through open waters, Barge 525 could move 100 feet up and down the pier along its own cables by using anchors and motorized winches.

Nielsen and the rest of the dockbuilding gang came to the pier every day by car. He would arrive at 6:30 a.m., park his car, and walk across the pier to Barge 525, where he would change into his work clothes and get his tools and equipment. After changing, he would return to the pier or to the checkerboard, a temporary frame located next to the pier and used to set and drive piles. A substantial portion of his duties were carried out on the pier or the checkerboard. At no time did he or any other member of his gang sleep on Barge 525.

On May 23, 1991, Nielsen sustained leg injuries while loosening and refitting piles on the checkerboard. Barge 525 was stationary for all of that day.

## II

■ Plaintiffs' cross-motion to remand is based on 28 U.S.C. § 1447(e), which provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Plaintiffs say that they have actions pending in New York State Court against New York City, the owner of the Old Coast Guard Piers, and Frederick R. Harris, Inc., the engineering firm supervising the work, and that joinder of these parties would destroy subject matter jurisdiction.

Section 1447(e) applies only if the party seeking a remand asks to join non-diverse parties as defendants. Plaintiffs have not done that. *Cf. Wyant v. National R.R. Passenger Corp.*, 881 F.Supp. 919 (S.D.N.Y.1995) (allowing joinder of non-diverse defendant and remanding case to state court). But in any event that section does not authorize remand here.

■ The court has subject matter jurisdiction over this case not only because of diversity of citizenship, but also because it arises under the Jones Act, a law of the United States. The joinder of non-diverse parties would *not* destroy that jurisdiction.

■ A more serious question arises because 28 U.S.C. § 1445(a) provides that an action in state court that arises under 45 U.S.C. §§ 51–60 may not be removed. The Jones Act adopts those provisions relating to removal. *See* 46 U.S.C.App. § 688(a). The Jones Act claim was thus not removable, except, of course, under 28 U.S.C. § 1441(c),

if it had been joined with a "separate and independent" removable claim. *See Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1022 (1984). Plaintiff's other claims are not separate and independent and in any event do not "aris[e] under the Constitution, laws or treaties of the United States." *See* 28 U.S.C. § 1331; *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (maritime claims are not "arising under" cases).

■ Section 1445(a), while it made removal of this case improper, does not serve to strip this court of subject matter jurisdiction over the Jones Act claims. Rather, it gives the plaintiff a personal privilege to bring his claim in state court without risking removal.

■ Under § 1447(c), as amended in 1988, a motion to remand "on the basis of any defect in removal procedure" must be made within thirty days after the filing of the notice of removal. Plaintiffs did not do that but proceeded to take depositions and otherwise to litigate in this court for some two years. While the language of 1447(c) is hardly unambiguous, its evident purpose was to make the 30 day limit applicable to any remand motion except where the court lacks subject matter jurisdiction. *See* H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033; *see also* 14A Wright, Miller, and Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3739 (Supp.1995) and authorities cited therein.

■ The plaintiffs did not meet the 30 day time limit. The court, which has subject matter jurisdiction, may not remand the case *sua sponte*.

### III

■ Under Federal Rule of Civil Procedure 56(c) the court will grant summary judgment if the evidence shows that there is no genuine issue as to any material fact and that the movants are entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movants. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987).

### IV

■ Plaintiff's complaint alleges that Weeks was negligent under both the Jones Act and the general maritime law. Congress enacted the Jones Act because the general maritime law did not provide a cause of action for negligence. *See Chandris, Inc. v. Latsis*, — U.S. —, —, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995). Nielsen's only possible claim for negligence lies under the Jones Act.

■ The Jones Act provides, in relevant part, that "Any seaman who shall suffer personal injury in the course of his employment may sustain an action for damages at law." 46 U.S.C.App. § 688. Only a "seaman" may recover under the Jones Act. The *Chandris* case recently clarified the standards for determining whether an employee is a seaman.

■ In that case, the Court explained the two requirements for seaman status. First, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." *Id.* at —, 115 S.Ct. at 2190 (citations and internal quotations omitted). Second, "a seaman must have a connection to a vessel in navigation ... that is substantial in terms of both its duration and its nature." *Id.*

As the Supreme Court said in *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991) (emphasis added), "The key to seaman status is employment-related connection to a *vessel in navigation.*" This court therefore focuses on whether Barge 525 was a "vessel in navigation."

■ The Second Circuit has not decided whether a barge without independent motive power is such a vessel. *See Buccellato v. City of New York*, 808 F.Supp. 967, 973 n. 5 (E.D.N.Y.1992). But other circuits have considered facts similar to those presented here and ruled that such a barge is not a vessel in

navigation. *See Ellender v. Kiva Const. & Engineering, Inc.*, 909 F.2d 803, 806 (5th Cir.1990) (a barge that "was not designed to transport passengers, cargo, or equipment from place to place across navigable waters, ... required tugboats or other vessels to move it, and ... remained virtually stationary during any particular project, ... would not qualify as a Jones Act vessel").

In *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119, 1123 (1st Cir.) (en banc), *cert. denied*, 506 U.S. 827, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992), plaintiff, a crane operator and maintenance worker assigned to a "dumb" barge holding a crane used in bridge repair, was injured while standing on a supply barge. The First Circuit held that "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *Id.*

Other circuits have applied the same test to similar facts. In *Hatch v. Durocher Dock & Dredge, Inc.*, 33 F.3d 545 (6th Cir.1994), plaintiff, a "deckhand/piledriver," was assigned to a derrick barge with no internal propulsion system and used as a piledriver in a dockbuilding project. Plaintiff sometimes helped to move the barge. He injured his back stepping from a platform onto the barge. Since the barge's primary purpose was construction rather than transportation and was not "actually underway" when plaintiff was injured, the court granted defendant's motion for summary judgment. *See id.* at 548.

Two judges in this district have made similar holdings. In *Sala v. Gates Const. Corp.*, 868 F.Supp. 474 (E.D.N.Y.1994) (Johnson, D.J.), defendant used two barges in a pier renovation project, one to hold a crane and the other to hold building materials. Plaintiff was hit on the head by a timber while working on the materials barge. Anchored and incapable of self-propulsion, the barges' primary purpose was "to act as scaffolding" and they were not in transit at the time of the accident. The court ruled that they were not vessels in navigation. *Id.* at 479.

In *Tonnesen v. Yonkers Contracting Co.*, 847 F.Supp. 12 (E.D.N.Y.1994) (Seybert,

D.J), plaintiff was injured while working on a crane barge used in constructing a bridge. The barge had no engine, was fixed in place on steel legs, was used only as a work platform, and was moved only when towed to the work site and when changing position at the site. The court determined that since the barge's primary purpose was not the transportation of goods or people and it was not moving at the time of the accident, it was not a vessel in navigation. *See id.* at 16.

The court agrees with these decisions. The First Circuit noted that "[a] worker becomes a seaman not by reason of the physical characteristics of the structure to which he is attached, but because its being operational 'in navigation' exposes him to a seaman's hazards." *DiGiovanni*, 959 F.2d at 1123.

This court concludes as a matter of law that Barge 525 was not a "vessel in navigation." Plaintiff admits that the barge was anchored at the pier, moved only along the work site of the pier, was not used to transport people or cargo to other sites, was capable only of limited self-propulsion, and was only used to drive piles and to hold the equipment for the pier. Plainly the chief purpose of Barge 525 was not transportation or commerce, but was to act as a work station for the dock repairs.

■ That Barge 525 was "in the ebb and flow of the tide" and that it moved along the pier did not make it a vessel in navigation. *See Hatch*, 33 F.3d at 547 (plaintiff "assisted in moving the [barge] along the new docks as work progressed and in moving it at the end of a workday to another dock"); *DiGiovanni*, 959 F.2d at 1121 (barge was anchored in tidal waters and moved away from piers at night); *Sala*, 868 F.Supp. at 475 (barge was moved around work site); *Tonnesen*, 847 F.Supp. at 16 (barge was anchored in tidal waters and plaintiff assisted in repositioning it at work site).

The fact that plaintiff on occasion participated in handling the lines as the barge was moved along the pier did not transmogrify it into a vessel in navigation. Since plaintiff had no relationship to a vessel in navigation, he has no claim under the Jones Act.

## V

■ Plaintiff has no claim for breach of the duty of seaworthiness because the barge was not a vessel in navigation. *See Watkins v. Pentzien, Inc.*, 660 F.2d 604, 607 (5th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1981). In any event, plaintiff was not injured on the barge, but on the checkerboard.

## VI

■ Plaintiff Jacqueline Nielsen's claims for loss of marital consortium are derivative of her husband's claims. In *Igneri v. Cie de Transports Oceaniques,* 323 F.2d 257 (2d Cir.1963), *cert. denied,* 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964), the court ruled that the Jones Act allows seamen, but not their wives, to bring actions at law against their employers. Accordingly, the Jones Act does not provide a cause of action for loss of consortium. *See id.* at 266. Damages for loss of consortium are also unavailable in an unseaworthiness action under the general maritime law. *See Horsley v. Mobil Oil Corp.,* 15 F.3d 200, 202–03 (1st Cir.1994) and cases cited therein.

## VII

Defendants' motion for summary judgment is granted. Plaintiffs' claims are dismissed.

So ordered.